OPINION OF THE COURT
Dennis F. Bender, J.
The plaintiff in this case alleges he was seriously injured when bitten by a Rottweiler dog given to him by his son the previous day. He further alleges that his son had previously been given the dog by the defendant, who never warned the plaintiff or the son of the dog’s known vicious propensities. Pursuant to answers provided by the plaintiff to interrogatories, *811 the defendant also knew the son intended to give the dog to the plaintiff for a pet. The son is not a party to the action.
The complaint alleged four causes of action founded, respectively, in strict liability, a negligent failure to warn, a breach of implied warranties, and fraud.
The defendant now moves for summary judgment dismissing the complaint in its entirety. In response, the plaintiff consents, excepting for the cause of action alleging a failure to warn under a theory of negligence. Specifically, the plaintiff argues that a dog’s owner has a duty to warn of known vicious propensities upon transfer of the animal, and that liability for a breach of this extends not only to the immediate transferee, but subsequent owners as well. The defendant argues in essence that lack of ownership of the dog at the time it attacks someone precludes a finding of any liability. Both parties indicate they could not find any case law addressing this specific issue by the New York courts.[1]
The question of whether a duty was owed is one of law for the court to answer. (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 288-289 [2001]; Eiseman v State of New York, 70 NY2d 175, 187 [1987].) Was it owed here, the defendant thus being liable for his passive failure to warn?
Cases from elsewhere hold that not only did the defendant owe no duty to the plaintiff, but that none was even extended to the plaintiffs son. As stated in Charowsky v McGovern (68 Sch LR 166 [Pa Ct Com Pl 1972]), an unpublished Pennsylvania decision cited by the defendant,
“the gravamen of plaintiffs complaint is simply that knowledge alone by a dog owner of his vicious tendencies at the time its ownership is transferred to another is sufficient to make the former owner responsible for subsequent acts of the dog, even though it is then owned, harbored and controlled by the new owner. The plaintiffs cite no cases in support of their complaint and we have found none. However, we are of the opinion that the law does not go this far.” (Supra at 168.)
The Charowsky court did not, unfortunately, state why it is of that opinion.
*812 The defendant’s position is further supported by the matter of Koepke v Martinez (84 SW3d 393 [Tex Ct App 2002]). In that case, ownership of a dog was transferred a day before the dog attacked a caretaker feeding the dog on behalf of the new owners. There, the court concluded,
“The gist of an action brought to recover for injuries caused by a domestic animal, resulting from other than [one in strict liability for] known vicious propensities, is usually negligence of the owner or keeper in the keeping or handling of the animal. Therefore, appellees were required to prove that Koepke was the owner or keeper of [the dog] at the time of the incident, and that he negligently handled [it] . . . Because Koepke was neither the owner, nor the handler, of [the dog] at the time of the incident, he owed no duty to appellees.” (Supra at 396 [citations omitted].)
At least one situation exists in New York, however, where liability for the actions of a domestic animal by one other than the owner has been found. A landlord, aware of the vicious propensities of a tenant’s dog, has a duty to take reasonable steps to insure the public is protected from the animal. (Strunk v Zoltanski, 62 NY2d 572 [1984].) While noting that the landlord was not strictly liable, the Court of Appeals held that the owner of the property, if aware of the dog’s vicious propensities at the time it leased the property to the dog’s owner, “could be found affirmatively to have created the very risk which was reasonably foreseeable and which operated to injure plaintiff.” (Supra at 575.) The landlord thus had a duty to take “reasonable care in her arrangements with the tenant to protect third persons from injury.” (Supra at 577.)
Logic would suggest that the immediate grantee of a dog, whether for consideration or not,[2] has the right to be warned of vicious propensities of the dog known to the grantor. (Eiseman v State of New York, supra at 188-189.) Imposing a duty to warn would place no burden upon the grantor, and would serve to easily avoid a risk of harm which would, absent notice, be much more likely to occur. (See generally 79 NY Jur 2d, Negligence § 17, at 356-358 [“Factors considered in determining existence of duty”].) Imposition of such a duty would also serve public *813 policy, which is “the appropriate frame of reference for determination of tort liability in situations newly confronted by the courts.” (Strunk v Zoltanski, supra at 576.)
Even if such a duty was found, however, whether it should extend to subsequent transferees is questionable. Forseeability of a danger alone is not sufficient to establish a duty. (Eiseman v State of New York, supra at 187; Echorst v Kaim, 288 AD2d 595 [3d Dept 2001]; Vogel v West Mtn. Corp., 97 AD2d 46, 50 [3d Dept 1983].) And while “[t]he duty of an actor to exercise care in the performance of an obligation due to another may inure to a third person under certain circumstances” (Harriman v New York, Chicago & St. Louis R.R. Co., 253 NY 398, 402 [1930]), this court has found no case in which a duty was found where there was not some remaining nexus between the defendant and the cause of the injury, or between the defendant and the plaintiff. In the Strunk case cited above, for example, it is reasonable to say that no matter how dangerous the dog was, no liability would have been found on the landlord’s part had she sold rather than rented the property to the dog’s owner.
In conclusion, this court determines as a matter of law that, even if a duty to warn may have extended to the plaintiffs son, none was owed to the plaintiff. No current or even past relationship existed between them, and there was no remaining control over the dog by the defendant. Further, aside from this lack of any nexus between the parties, extension of the duty to subsequent owners is simply impractical. If a duty extended out to the second of subsequent owners, then why not to 3, 5 or 10? What would be the effect of the knowledge and actions of intervening owners? Would not all intervening owners be necessary parties? The courts have an obligation “to consider the larger social consequences of our decisions and to tailor our notion of duty so that ‘the legal consequences of wrongs [are limited] to a controllable degree’ ” (Eiseman v State of New York, supra at 187 [citations omitted]). In this court’s view, to allow a duty to be found in this case would require the court to violate that obligation.
The motion for summary judgment dismissing the complaint in its entirety is granted, without costs.

. The defendant cited Bukhatetsky v Vysotski (296 AD2d 367 [2d Dept 2002]) in support of his motion. The only issue in Bukhatetsky, however, was whether the appellants still owned a dog and were thus strictly liable, as a result of their failure to notify authorities of its transfer in accordance with Agriculture and Markets Law § 113.

. “It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.” (Glanzer v Shepard, 233 NY 236, 239 [1922] [citations omitted].)